**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL G.,<br><br>              Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>              Defendant. | Civil Action No. 21-01952 (SDW)<br><br>**OPINION**<br><br>May 31, 2022 |

**WIGENTON**, District Judge.

Before this Court is Plaintiff Michael G.'s ("Plaintiff")[1] appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") with respect to Administrative Law Judge Beth Shillin's ("ALJ") denial of Plaintiff's claim for disability insurance benefits ("DIB") under the Social Security Act (the "Act").  This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Venue is proper pursuant to 28 U.S.C § 1391(b). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons set forth below, this Court finds that the ALJ's factual findings are supported by substantial evidence and that her legal determinations are correct.  Therefore, the Commissioner's decision is **AFFIRMED**.

---

[1] Plaintiff is identified only by his first name and last initial in this opinion, pursuant to Chief District Judge Freda Wolfson's Standing Order 2021-10, issued on October 1, 2021, *available at* https://www.njd.uscourts.gov/sites/njd/files/SO21-10.pdf.

I.     **PROCEDURAL AND FACTUAL HISTORY**

A.     **Procedural History**

Plaintiff filed for DIB on August 2, 2018, alleging disability as of September 13, 2017, due to left knee reconstructive surgery, back surgeries, and anxiety.  (*See* D.E. 5 (Administrative Record ("R.") at 186–94; 250–52.)  Plaintiff later amended the onset date to March 19, 2018. (R. 206.)  The state agency responsible for disability determinations denied Plaintiff's claim at the initial and reconsideration levels.  (R. 115–23.)  Subsequently, Plaintiff requested a hearing before an ALJ.  (R. 124–25.)  Plaintiff, who was represented by counsel, and vocational expert, Richard Hall ("VE Hall"), testified at a hearing on January 22, 2020.  (R. 32–84.)  On April 15, 2020, ALJ Shillin determined that Plaintiff was not disabled.  (R. 10–24.)  On December 9, 2020, the Appeals Council denied Plaintiff's request for review.  (R. 2–6.)  Plaintiff filed the instant appeal in this Court, and the parties completed timely briefing.  (*See* D.E. 1, 13, 17.)

B.     **Factual History**

Plaintiff is fifty-three years old and has a high school diploma.  (R. 40, 85.)  He previously worked as a propane truck driver, which is medium exertion work, but which Defendant performed at a very heavy level. (R. 42–43, 76.)  The following is a summary of the relevant medical evidence in the record.

<u>Physical Impairments</u>

In September 2017, prior to the relevant period, Plaintiff sustained a back injury at work. (R. 369, 377.)  Treatment records show that Plaintiff "had straight leg raising to 75 degrees on the left with minimal discomfort and raising to 75 degrees on the right with lumbar spine pain.  (R. 19 (citing Exhibit 2F), 376.) Plaintiff had full deep-tendon reflexes, and he had "5/5 muscle strength on the left and 4/5 on the right," exacerbated pain with side bending and twisting to the right, and

normal ambulation.  (R. 19, 4 (citing Exhibit 2F), 376–77.)  Plaintiff was instructed "to rest and ice his back, and . . . use over[-]the[-]counter Advil and Aleve . . . ."  (R. 19 (citing Exhibit 2F), 377.)

An October 2017 MRI "showed that Plaintiff was status-post hemilaminotomy at L4-5 and impingement of the right L5 nerve root and moderate spinal stenosis."  (R. 19 (citing Exhibit 1F), 339.)  He also had right-side herniation, "suspicion for post-surgical fibrosis," and "hypertrophy of the residual facets."  (R. 339.)  An October 2017 physical examination revealed that Plaintiff had "reduced lumbar flexion, but normal extension."  (R. 19, citing Exhibit 6F), 425.)  Plaintiff could "stand erect and ambulate without a limp."  (R. 19, (citing Exhibit 6F), 425.)  He also "had no tenderness to lumbar palpation and negative bilateral straight leg raising in the seated position." (R. 19 (citing Exhibit 6F), 425–26.)

A return-to-work release from September 18, 2017 through October 2, 2017 indicated that Plaintiff "could occasionally use foot controls on the right and frequently on the left with full use of his hands and could lift a maximum of [ten] pounds."  (R. 21 (citing Exhibit 1F), 357.)  A return-to-work release from October 2, 2017 through October 16, 2017 indicated that Plaintiff could "continuously use foot controls bilaterally, would have full use of hands, and could lift a maximum of 10 pounds."  (R. 21 (citing Exhibit 1F), 350.)

Plaintiff's lumbar pain continued even after he had nine epidural injections, tried oral steroids and anti-inflammatory medications, and went to physical therapy.  (R. 19 (citing Exhibit 6F), 419.)  Plaintiff underwent "a third revision decompression at L4-5, which occurred in March 2018."  (R. 19 (citing Exhibit 6F), 417, 419–20.)  Post-surgical treatment records from September 2018 showed that Plaintiff was "doing very well" approximately six months after his revision surgery, and that "he describe[d] very little residual symptoms."  (R. 405; *see also* R. 19 (citing

3

Exhibit 6F).)   Plaintiff's "prognosis [was] good," but his physician advised him to "seek employment in the future where he [could] avoid lifting over [twenty-five] pounds and avoid jobs that require repetitive bending."  (R. 405–06; *see also* R. 19.)  A September 2018 return-to-work note indicated that Plaintiff "could not lift over [twenty-five] pounds" and could not perform work requiring "repetitive or prolonged bending or stooping."  (R. 21 (citing Exhibit 5F), 401.)

In November 2018, Disability Determination Services ("DDS") medical consultants Arthur Pirone, M.D. and Ibrahim Housri, M.D. independently reviewed Plaintiff's medical records and found that he could perform a range of light work.  (R. 21 (citing Exhibits 1A, 3A), 92, 106–07).

During a January 2019 consultative examination with Samuel Wilchfort, M.D., Plaintiff reported "low back pain with left leg sciatica," and numbness in his left calf.  (R. 457; *see also* R. 19 (citing Exhibit 10F).)  Dr. Wilchfort noted that Plaintiff had "decreased [range of motion]" in his back, but no demonstration of neuro deficit.  (R. 457.)  Plaintiff also had normal range of motion in his left knee and was "able to squat."  (*Id.*)

Also in January 2019, Plaintiff was examined by a new doctor, Adity Bhattacharyya, M.D., who noted that Plaintiff ambulated normally and reported no falls within the past year.  (R. 745).  Dr. Bhattascharyya noted that Plaintiff "complain[ed] of back pain and stiffness."  (R. 747.)

At a March 2019 evaluation and nerve conduction study with Martin Diamond, M.D., Plaintiff reported "low back pain bilaterally with numbness to the right lateral leg as far as the ankle."  (R. 526.)  He also reported "buckling on the left twice with fall."  (R. 526.)  Dr. Diamond noted that "the only electrodiagnostic abnormalities seen in the legs [were] asymptomatic loss of the left peroneal F-wave," which could have resulted from a nerve block Plaintiff had been given or may have been a sign of "L-5 radiculopathy."  (R. 528.)

In a July 2019 workers' compensation physical examination, David Weiss, D.O., noted that Plaintiff "ambulates with a forward-flexed antalgic gait," and is "unable to perform calcaneal or equinus gait." (R. 770; *see also* R. 20 (citing Exhibit 15F).)  Dr. Weiss found that Plaintiff had "paravertebral muscle spasm and tenderness over the posterior midline," tenderness over the sacroiliac joint bilaterally" and a positive "sacroiliac joint compression test," restricted lumbar range of motion, positive straight leg raise test, restricted range of motion in his left knee with "retropatellar pain and crepitus," tenderness of the medial and lateral patellar facet and medial and lateral joint line, "tenderness over the medial femoral condyle," knee laxity with varus stress testing," 3/5 muscle strength in the left quadriceps and 4/5 in the right quadriceps, and "a perceived sensory deficit over the L5 dermatome of the left lower extremity."  (R. 773–74; *see also* R. 20 (citing Exhibit 15F).  Dr. Weiss determined that Plaintiff "is to be considered 100% disabled as physiologic industrial unit from all causes."  (R. 775; *see also* R. 20 (citing Exhibit 15F).)

## Mental Impairment

In a January 2019 psychological consultative examination, Nadine Gardner, Psy.D., diagnosed Plaintiff with "[u]nspecified [d]epressive [d]isorder" and a learning disability.  (R. 455.) Plaintiff complained of difficulty falling asleep, and alleged that he experienced "dysphoric mood, social withdrawal, poor concentration[,] and loss of pleasure with some crying spells."  (R. 454.) Dr. Gardner noted that Plaintiff was cooperative and well-groomed, and he had normal motor behavior and appropriate eye contact.  (*Id.*)  He also had "coherent and goal-directed" thought processes, but he also had a somewhat dysthymic and angry mood.  (*Id.*)  Dr. Gardner opined that Plaintiff had no impairment in his "ability to understand, remember, and carry out simple directions and a moderate impairment carrying out complex directions."  (R. 455). Dr. Gardner further opined that Plaintiff had "moderate impairments sustaining attention and concentration and

working at a reasonable pace." (*Id.*)  Additionally, Dr. Gardner opined that Plaintiff had "mild impairments with maintaining appropriate social interaction with the public, co-workers[,] and supervisors[,] and a mild impairment reacting appropriately to normal work pressure." (*Id.*)

In February 2019, DDS mental health consultant Robert Eckardt independently reviewed the record evidence and found that Plaintiff had moderate limitations in understanding, remembering, or applying information and in concentration, persistence, or pace, and he had mild limitations in interacting with others and adapting or managing himself. (R. 105.)

### C.    Hearing Testimony

At an administrative hearing on January 22, 2020, Plaintiff was represented by counsel. (R. 33–36.)  VE Hall also appeared and testified that Plaintiff's past relevant work included a position as a propane truck driver. (R. 76.)  VE Hall indicated that this position is typically performed at a medium exertion level, but Plaintiff performed it at a "very heavy level." (*Id.*)  After considering Plaintiff's limitations, VE Hall testified that jobs with "light exertional demand" are available in the labor market, including positions as a mail sorter (110,000 available jobs), a gate attendant (115,000 available jobs), or an assembly line worker (125,000 jobs). (R. 76–77.)  If considering unilateral limitations on handling and increased fingering and feeling, VE Hall opined that jobs were still available, including positions as an order caller (120,000 jobs), a router (110,000 jobs), or a ticket taker (115,000 jobs). (R. 77–79.)

## II.    LEGAL STANDARD

### A.    Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  Yet, this Court's review of the

ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (internal quotation marks omitted) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he [or she] accepts and which he [or she] rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

**B.      The Five-Step Disability Test**

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382.  A claimant will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months.  42 U.S.C. § 423(d)(1)(A).  The impairment must be severe enough to render the claimant "not only unable to do his [or her] previous work but [unable], considering his [or her] age, education, and work experience, [to] engage in any kind of substantial gainful work [that] exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ."  42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step, sequential analysis.  20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480.  If the ALJ determines at any step that a claimant is or is not disabled, the ALJ does not proceed to the next step.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(i), 404.1571–76, 416.920(a)(4)(i).  SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit."  20 C.F.R. §§ 404.1510, 416.910.  If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits, regardless of the severity of the

claimant's impairments.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on the claimant's ability to work.  20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p.  An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If a severe impairment or combination of impairments is not found, the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e).

RFC is the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant can perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis, where the claimant bears the burden of persuasion, at step five the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III.   DISCUSSION

### A.   The ALJ's Decision

On April 15, 2020, ALJ Shillin issued a decision concluding that Plaintiff was not disabled from March 19, 2018, through the date of decision. (R. 24.) At step one, the ALJ found that Plaintiff "me[t] the insured status requirements of [the Act]" and had "not engaged in substantial gainful activity" throughout the aforementioned time period. (R. 15.)

At step two, the court found that Plaintiff "ha[d] the following severe impairments: status-post left knee reconstruction; status-post lumbar fusion at L4-5 with placement of rods; depression; and anxiety." (*Id.*)   Additionally, the ALJ found that Plaintiff had non-severe impairments, including Plaintiff's "status post-hernia surgery, mild speech impediment, hypertension, obstructive sleep apnea, and obesity," noting that his weight was "steadily coming down" and "causes no more than minimal limitation on his ability to perform basic work-related activities." (R. 15–16 (citing Exhibits 2F and 15F).)

At step three, ALJ Shillin concluded that Plaintiff did "not have an impairment or combination of impairments that me[t] or medically equal[ed] the severity of one of the listed impairments." (R. 16.)  The ALJ found that Plaintiff's clinical records did not satisfy the criteria of Listing Section 1.04.  (R. 49 (*See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04.).)  Specifically, Plaintiff's records did not indicate "1) evidence of nerve root compression . . . ; or 2) spinal arachnoditis . . . ; or 3) lumbar spinal stenosis . . . , as defined in 1.00B2b . . . ." (*Id.*)  The court also found that Plaintiff had "not suffered major dysfunction of a joint(s) (due to any cause) . . . , resulting in inability to ambulate effectively, as defined in 1.00B2b; or involvement of one major peripheral joint in each upper extremity . . . , resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c . . . ." (*Id.*)

Further, the court determined that "the severity of [Plaintiff's] mental impairments, . . . d[id] not meet or medically equal the criteria of [L]istings 12.04 and 12.06." (*Id.*)  To meet Listing 12.04, a claimant must prove that he or she meets both the "paragraph A" criteria and either the "paragraph B" or "paragraph C" criteria.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04. Paragraph A requires that claimant have a "[d]epressive disorder, characterized by five or more"

enumerated criteria, or "[bi]polar disorder, characterized by three or more" enumerated criteria.

*See id.* § 12.04(A)(1)–(2).  Paragraph B requires that a claimant have

> [e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning . . . :
>
> 1. Understand, remember, or apply information . . . .
> 2. Interact with others . . . .
> 3. Concentrate, persist, or maintain pace . . . .
> 4. Adapt or manage oneself . . . .

*Id.* at § 12.04(B)(1)–(4).  Paragraph C requires that a claimant's "mental disorder in this listing category is 'serious and persistent'" and that the claimant have medical documentation that the disorder has existed over at least a two-year period, with evidence of ongoing mental health treatment "that diminishes the symptoms and signs of [the claimant's] mental disorder" and "marginal adjustment" in the claimant's ability and "minimal capacity to adapt to changes in . . . environment or to demands that are not already part of . . . daily life."  *Id.* at § 12.04(C)(1)–(2).

To meet Listing 12.06, a claimant must prove that he or she meets both the "paragraph A" criteria and either the "paragraph B" or "paragraph C" criteria.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.06.  Paragraph A requires that claimant document either "[a]nxiety disorder, characterized by three or more" enumerated criteria; "[p]anic disorder or agoraphobia, characterized by or "[bi]polar disorder, characterized by one or both" enumerated criteria; or "[o]bsessive-compulsive disorder, characterized by one or both" enumerated criteria.  *See id.* § 12.06(A)(1)–(3).  Paragraph B requires that a claimant have

> [e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning . . . :
> 1. Understand, remember, or apply information . . . .
> 2. Interact with others  . . . .
> 3. Concentrate, persist, or maintain pace  . . . .
> 4. Adapt or manage oneself  . . . .

Paragraph C requires that a claimant's "mental disorder in this listing category is 'serious and persistent'" and that the claimant can medically document that the disorder has existed over at least a two-year period, with evidence of ongoing mental health treatment "that diminishes the symptoms and signs of [the claimant's] mental disorder" and "marginal adjustment" in the claimant's ability and "minimal capacity to adapt to changes in . . . environment or to demands that are not already part of . . . daily life." *Id.* at § 12.06(C)(1)–(2).

ALJ Shillin found that Plaintiff's mental impairments did not result "in at least two 'marked' limitations or one 'extreme' limitation"; thus, the paragraph B criteria were not satisfied. (R. 16–17.)  The court also found that the paragraph C criteria were not met because "the evidence fail[ed] to establish the presence of the" required criteria.  (R. 17.)  Plaintiff's treatment notes indicated "some mental health treatment, but Plaintiff did "not display a minimal capacity to adapt to changes" to his environment or "to demands that are not already part of his daily life." (*Id.*)

At step four, the court found that Plaintiff had the RFC "to perform light work," as defined in 20 C.F.R. 404.1567(b), with limitations such as being "unable to climb ladders, scaffolds[,] or ropes"; only occasionally being able to "climb stairs or ramps[,] crouch, crawl, stoop, kneel[,] or balance"; being able to "perform simple and unskilled tasks"; being able to "frequently handle, finger[,] or feel"; and having "the option to sit/stand at will within the work station while remaining on task." (R. 18.)  In making this determination, the court considered Plaintiff's reported pain and symptoms, discussed his difficulty with certain movements and lifting, and factored in his anxiety and depression.  (*Id.*)  The court found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," his "statements concerning the intensity, persistence[,] and limiting effects . . . [were] not entirely consistent with the medical evidence and other evidence in the record . . . ."  (R. 18.)  ALJ Shillin also comprehensively

discussed Plaintiff's medical records and detailed the persuasiveness of each physician's medical opinion. (R. 18–22.) In particular, the court found that the DDS medical consultants' conclusions that Plaintiff could perform light work were persuasive and consistent with the record; contrary to the DDS mental consultant's opinion, Plaintiff "exhibit[ed] only mild impairment rather than moderate limitation in the ability to understand, remember[,] and apply information"; the 2018 return-to-work notice indicating Plaintiff could not lift over twenty-five pounds was persuasive; the return-to-work release from 2017 indicating Plaintiff was limited to a maximum of lifting ten pounds was unpersuasive because it pertained to a "very limited time period . . . prior to claimant's alleged onset date"; the psychological consultative examiner's conclusion that Plaintiff "ha[d] some but not work[-]preclusive limitations due to his mental impairments" was consistent with the record; the conclusion of the worker's compensation examiner finding Plaintiff 100 percent disabled was "not persuasive[,] as it is an opinion only on [Plaintiff's] ability to perform his prior work as a propane truck driver . . . ." (*Id.*) The court determined, therefore, that while Plaintiff would be unable to perform his past relevant work, his impairments were not disabling. (R. 22.)

Finally, at step five, the ALJ considered VE Hall's testimony, noted Plaintiff's limitations, and contemplated Plaintiff's "age, education, work experience, and [RFC]." (*Id.*) After factoring in those considerations and summarizing VE Hall's testimony about available jobs, the court determined that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (R. 23.) Therefore, ALJ Shillin concluded, Plaintiff was not disabled during the relevant period. (R. 23–24.)

### B.    Analysis

On appeal, Plaintiff seeks reversal or remand of the Commissioner's decision. (*See* D.E. 13 at 1, 28.) Plaintiff asserts that the ALJ erred in determining Plaintiff's RFC as it pertains to

physical limitation [2] and improperly concluded that Plaintiff can perform light work with limitations, and the ALJ improperly considered VE Hall's professional experience and testimony concerning positions available to Plaintiff.  (*Id.* at 4–28.)  This Court considers the arguments in turn and finds each unpersuasive.

First, Plaintiff argues that ALJ Shillin "afford[ed] no rationale for [the] physical RFC" and no "function-by-function analysis" showing how Plaintiff can perform unskilled, light work and have the option to sit all day.  (*Id.* at 17.)   Plaintiff specifically focuses on the court's analysis of Dr. Weiss's findings, and its rejection of the conclusion that Plaintiff is "100% disabled" because the conclusion pertained only to Plaintiff's position as a propane truck driver.  (*Id.* at 12–13.) Plaintiff contends that the reports "merely lists [P]laintiff's prior occupation in a single sentence along with other introductory particulars," thus the court should not have considered the report in that context.  (R. 13.)  Plaintiff further contends that because the court had to place additional limitations on the light work it found that Plaintiff can perform, the categorization should have been sedentary work, which would have rendered Plaintiff disabled.  (*Id.* at 13–17.)

Plaintiff's arguments are unconvincing.  ALJ Shillin thoughtfully considered Dr. Weiss's assessment, the DDS consultative assessments, and the return-to-work notice and release and elucidated cogent reasons for determining that Plaintiff did not meet or equal the Listing criteria. When evaluating a Plaintiff's claim, an ALJ considers the persuasiveness of medical opinions and "will explain how [he or she] considered the supportability and consistency factors for a medical

---

[2] Plaintiff made a one-sentence, passing reference to the ALJ's findings concerning Plaintiff's mental functions, but did not offer additional argument.  (D.E. 13 at 17.)  Accordingly, this Court considers any issue concerning the ALJ's determinations regarding Plaintiff's mental status in the RFC waived.  *See Laborers Int'l Union of North America, AFL-CIO v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994 ("An issue is waived unless a party raises it . . . , and for those purposes 'a passing reference to an issue . . . will not suffice to bring that issue before this court.'"  (quoting *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1066 (3d Cir. 1991) (plurality opinion) (Becker, J.), *cert. denied*, 112 S. Ct. 1671 (1992); *International Raw Materials v. Stauffer Chem. Co.*, 978 F.2d 1318, 1327 n.11 (3d Cir. 1992), *cert. denied*, 113 S. Ct. 1588 (1993))).

source's medical opinions or prior administrative medical findings in [the claimant's] determination or decision."  20 C.F.R. § 404.1520c(b)(2), (c)(1)–(5).  However, "[a]n ALJ need not defer to a treating physician's opinion about the ultimate issue of disability because that determination is an administrative finding reserved to the Commissioner."  *Gantt v. Comm'r Soc. Sec.*, 205 Fed. Appx. 65, 67 (3d Cir. 2006) (citing 20 C.F.R. § 404.1527(e)).

Here, ALJ Shillin carefully considered all of the assessments of Plaintiff's physical impairments and found Dr. Weiss's assessment "not persuasive[,] as it is an opinion only on [Plaintiff's] ability to perform his prior work as a propane truck driver . . . ."  (R. 22.)  While Plaintiff may disagree with the court finding Dr. Weiss's "opinion about the ultimate issue of disability" unpersuasive, the court is not required to defer to a physician's opinion.  *See Gantt*, 205 Fed. Appx. At 67.  The court specifically detailed Plaintiff's medical limitations and the court's rationale for finding that Plaintiff's RFC indicated Plaintiff could perform light work with limitations, and explained in detail "how [she] considered the supportability and consistency factors" in relation to each medical conclusion, as required by 20 C.F.R. § 404.1520c(b)(2), (c)(1)–(5).  (R. 18–22.)  The court agreed with the DDS consultants' opinions that Plaintiff can perform light work with limitations, which is consistent with the record.  This Court, therefore, finds that substantial evidence supported the ALJ's RFC assessment.

Second, Plaintiff argues that ALJ Shillin improperly considered VE Hall's professional experience and testimony concerning positions available to Plaintiff.  (D.E. 13 at 17–28.)  Plaintiff specifically contends that VE Hall's testimony contradicted the Dictionary of Occupational Titles ("DOT") and was "frankly impossible to believe."  (*Id.* at 17–20.)  Plaintiff further asserts that VE Hall took a light job and "magically transform[ed] it into a sedentary position based on his 'professional experience.'"  (*Id.* at 23.)

Plaintiff's argument is unavailing.  Plaintiff maintains that the occupations identified by the VE conflict with the job descriptions in the DOT, and takes issue with VE Hall's contention that Plaintiff could perform work as a "[g]ate [a]ttendant," asserting that the job could not be performed sitting down, nor could the job of an "assembly line worker." (*Id.* at 24–26.) However, Plaintiff ignores the fact that VE Hall also testified that Plaintiff could perform a position as a mail sorter, and there are 110,000 available jobs in the national economy for that position alone. (R. 77.) Additionally, ALJ Shillin specifically asked VE Hall whether the positions could be performed "with the option to sit or stand," in accordance with the limitations discussed in Plaintiff's RFC, and VE Hall confirmed such. (*Id.*)  While Plaintiff takes issue with the relevant DOT job descriptions that may require lifting ten to twenty pounds, (D.E. 13 at 22), "[t]he DOT lists *maximum* requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings," SSR 00–4p (emphasis added). The VE accounted for Plaintiff's limitations and testified that Plaintiff could perform these positions, per the DOT descriptions. (R. 76–78.)

VE Hall also considered additional limitations and further testified that Plaintiff could perform additional positions as an order caller, a router, or a ticket taker, each of which has significant available jobs in the national economy. (R. 77–78.) Plaintiff's contention that the VE's testimony conflicts with the DOT is unconvincing considering the VE factored in Plaintiff's limitations and the jobs do not all require a steady range of ten to twenty pounds of lifting; but rather those may be maximum requirements.  While Plaintiff disagrees with the court's consideration of the VE's expertise, the entire point of having a VE testify is to consider the VE's expertise; otherwise, the court would simply refer to the DOT without related testimony.  The court's reliance on the VE's testimony and expertise was consistent and supported.

In sum, the ALJ's decision is supported by substantial evidence.  This Court will therefore affirm.

**IV.**      <u>**CONCLUSION**</u>

For the foregoing reasons, this Court finds that ALJ Shillin's factual findings were supported by substantial credible evidence in the record and that her legal determinations were correct.  The Commissioner's determination is therefore **AFFIRMED**.  An appropriate order follows.

<u>s/ *Susan D. Wigenton*</u>
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**


Orig:   Clerk
cc:      Parties